Next case, number 171769, Antonio Borras-Borrero et al. v. Corporacion del Fondo del Seguro del Estado. Good morning, Your Honor. May I proceed? Yes, please. My name is Rafael Rivera Sanchez. I'm here representing the appellant, Antonio Borras-Ibelis-Borrero, and the conjugal partnership, Borras-Borrero. Your Honor, we're going to ask to display our time for our first stint of argument. We ask for 13 minutes of argument and two minutes for rebuttal. You want to reserve two minutes? Yeah. Yes. Your Honor, first of all, I'm grateful to be here and the opportunity to address this on our court. For now, later, I will refer to the State Insurance Fund Corporation, El Fondo, as we know here in Puerto Rico. We're here today for a judgment entered on March 31, 2017, by Judge Consuelo Cerezo, where the dismissal, we pray, that was entered. Your Honor, the reason was for failure to state a claim and qualify immunity grounds. We respectfully disagree with our opinion, Your Honor. The main controversy at this court is, in the complaint, state plausibly claims upon a relief could be granted, Your Honor, if the dismissal be with prejudice. If the plaintiffs deserve an opportunity to amend the complaint, or at least do discovery in the case. Also, another issue is if the Fondo is an arm of the state, and if the defendant can invoke 11 amendments and qualify immunity. Why didn't you amend already? You had indicated to the court that facts had come to your attention that would prompt you to amend, but you never did. Your Honor, we didn't amend the complaint. We believe that the complaint, even was 5%, was having enough facts and specific facts that asked why, where, what. And we complained with the Rule 12, or the plaintiff complained with the Rule 12 in the complaint, and also with Ickbar-Reed-Sanders. But you're beginning your argument telling us why the district court abused its discretion in not allowing you to amend. And therefore, my question is, if you indicated that facts had come to your attention that caused you to want to amend, why didn't you just do it? No, I didn't do it, no. The question is, if I do it? Why didn't you just amend, or move to amend? Because they said this needs to be resolved in the docket, Your Honor. It's already resolved by the district court. When we... We can amend the complaint, but it's already done. The ruling of the court is already done. I mean, why didn't you amend before the court ruled? Because you indicated to the court before the court ruled that you wanted to amend. And then time passed between that representation to the court and the court ruled. We understand that we asked the court about that, but we still believe that the complaint have enough facts, specific facts, that this needs to be resolved with prejudice. And it's not fair, Your Honor. That's our position on that. We didn't amend. But we still believe that the complaint have specific facts. I was just trying to address your first argument, but obviously go ahead. I beg your pardon, Your Honor? Proceed with your argument. Okay, sorry. Again, regarding the complaint, Your Honor, the court has to consider that that complaint was filed by the plaintiff that contained multiple and specific facts. When you consider the dismissal, you have to consider those facts as true facts. This case about the abrogation of constitutional right and freedom of speech, Your Honor, due process violation, retaliation for whistleblower, this is a case that last week we submitted to the consideration of this court. It's Rivera-Figueroa v. Su Autoridad Cualquier Canterillado, Praza. Have similar facts to this one. It's a public operation very similar to the FONDO, and that public operation was found liable for retaliation. And it's a recent case of 2009. The appellate brief tried to establish in some part by defendants that the facts are time-barred or we don't even comply with the statute of limitation because there are facts of 2010. It's important to know by this honor of court that this is another case related in some way with this case that we are here today, the case Bisbal that is citing our brief. In that case, the plaintiff, Antonio Borras, is also a plaintiff in that case. He's with the same judge that decided this case. It's against the FONDO, and he's pending for trial in February 2019. The allegation in that other case, Bisbal, is that Antonio Borras served as a whistleblower in the FONDO, denouncing illegal acts, corruption, political discrimination. And the present case is a change of event that culminated in 2014 with a physical aggravation by another employee to Mr. Borras. Borras, at all different times, was complaining and asking for protection because he feared for his life inside the FONDO. But the FONDO did nothing to protect Borras. At contrary, the high management of the FONDO defendants used Mr. Escobar, that was the one that hit Mr. Antonio Borras, as the hitman to fabricate an administrative case against Borras. Use his personal file, use Borras' personal file in the criminal case against Escobar to look like Borras was the one who started the fight. The FONDO turned around all facts to change Borras from victim to perpetrator. In Borras' administrative hearing at the FONDO, even Borras claimed peace amendment to not incriminate himself because at that specific time was a criminal investigation in process. Next day, next day of the hearing, Borras was suspended. The truth is that the FONDO wanted to get rid of Mr. Borras because he was a whistleblower all the time in the FONDO. Also, his wife is a plaintiff in this case because she was a victim of retaliation. Next day, the suspension of Mr. Borras, Ms. Borrero, was unjustified transfer from Carolina region to San Juan region. The complaint is our understanding that there are enough allegations that deserve relief, and there are specific facts of retaliation and due process violations. Regarding the FONDO as an arm of the state, if they could invoke a level of immunity, our understanding is no. Why? Because there are at least two inconsistent opinions with this regard in the first instance court. Bisbal, the one I just referred, was decided by the same judge, and Borras is a plaintiff in that case, and the case of Gilbert. The jury is also sitting in our brief. In Gilbert, the late Honorable Salvador Casella, applying Frisenio's requirement, found that FONDO do not have 11 amendment immunity. If we check the Enabling Act of the FONDO, the Enabling Act permits FONDO to prepare and formalize agreement, contract with Commonwealth, may sue, be sued. Once appointed, the Board of Directors of the FONDO has complete authority. The Commonwealth does not have veto power over FONDO decisions. The member of the Board of Directors of the FONDO could only be removed for just cause. Also, the FONDO participates in the stock market. All this shows that there is no control from the Commonwealth of the FONDO.  And that is the first requirement of the case proceedings. So the FONDO cannot invoke 11 amendment immunity. In the appellate brief, they tried to establish that the FONDO, because the FONDO... What does the new PRONESA law, how does that impact your 11th amendment argument, please? Your Honor, in PRONESA law, taking a summary, the FONDO is a creditor of the Commonwealth of Puerto Rico. Why? Because as stated in the brief of the appellate, they have lent a great amount of money to the FONDO. And this is money that is owned by the Commonwealth to the FONDO. Our analysis of proceedings, Your Honor, is that appellant must show that the FONDO depends, in some way, economically speaking, of the Commonwealth of Puerto Rico. But that's not true. The truth is all the way around. The Commonwealth is now depending on the only public corporation with surplus in Puerto Rico. By that theory of the appellate, maybe next year, there is no more public corporation with surplus in Puerto Rico. There will be another FONDO, another public corporation, Your Honor. That's our understanding of PRONESA, Your Honor. Well, the PRONESA court is exercising dominion over these funds at present. Isn't that correct? It's a covert entity, Your Honor, yes, because it's the only public corporation that is, in some way, helping. And they explain that helping, economically speaking, the Commonwealth of Puerto Rico. But in Fresenio's case, Your Honor, we have to study first what control has the Commonwealth from the FONDO. That's the first requirement. And Fresenio's case, that requirement doesn't comply. Nothing more. You don't have to look for something else. The 11th Amendment don't apply to FONDO. In our analysis, there is no control from the Commonwealth to the FONDO. The FONDO operates their own income. They make their own contract. They spend their adjustment. They do all independent from the Commonwealth. Are you telling me that every time funds are seized through the PRONESA court operation, that there is a loan agreement or something drawn up between the FONDO and the Commonwealth? No loan agreement. They have to legislate. They have to pass a law to pass money from this corporation to the Commonwealth of Puerto Rico. If there is a control from the Commonwealth to the FONDO by executive order of the governor, that's it. The governor says, hey, FONDO, give me the money. And that's it. And we are talking about the second part of the Fresenio's requirement, Your Honor. We have to... If the governor has that kind of control over the money through legislation, that suggests a whole lot of control. Your Honor, we disagree a little bit about that contention. Legislation is a process that they need to pass from two legislative purposes and a representative purpose. It's a long way that not necessarily establish control, economically control from the FONDO. All right. Thank you. I'm done, Your Honor. Well, you've reserved some time for rebuttal. Okay. Thank you. Good morning. May it please the Court. My name is Carlos Lugo. I'm representing the individual defendants. And our position is that the judgment of dismissal should be affirmed. I will address a few of a broader counsel's arguments here. Well, you do agree, don't you, that the state law claims should have been dismissed without prejudice? Yes, we agree with that. And I understand that the Court only refused to exercise its supplemental jurisdiction. So that's the applicable law states that it is without prejudice. First, regarding the amendment of the complaint, plaintiffs could have amended the complaint throughout the entire case before the district court. They were allowed to do so as a matter of course because there was no responsive pleading. It was only motions to dismiss. And they did not do it. They told the Court they would do it. They did not do it. After judgment, they cannot do it unless the Court judgment is either reversed or vacated. And our position, obviously, is that it should be affirmed. He speaks about the case of Rivera-Figueroa v. AAA. That is a case under Law 115. And that goes to a mistake that plaintiff has been making through the entire appeal, both in his argument about the First Amendment and his argument about the qualified immunity issue. And it is that he's trying to apply Puerto Rico law as a substantive law under Section 1983. That is not possible. As we stated in the brief, the substantive law under Section 1983 is federal. Section 1983 protects persons against violations of the federal constitution and federal laws, not state laws. State laws have their own protections. And he has his own cause of action under Law 115. He has to pursue it now in Puerto Rico. And then we will apply the defenses that we may have. But here, both in terms of qualified immunity and in terms of the Section 1983 claims, the applicable law, the substantive law, is federal law. Regarding the case of Bisbal, I have to clarify something here. And it is that we are not claiming in our brief that the entire case is time-barred. That's not correct. What we're saying is that he's alleging his retaliation claim, which is the most important claim here, consists of three adverse employment actions from the defendants and the state insurance fund. The first one is the demotion of May 2010. That's the one we're saying is time-barred because it happened on May 2010. He knew it happened. It wasn't hidden from him. And he had one year from the time from that demotion to file any claim under Section 1983 regarding that particular personal action. He did file one complaint, which is the Bisbal case he mentions. But in that case, he does not make a retaliation claim against defendants. He does not make defendants are not parties. And in no other way did he interrupt the limitations period for the Section 1983 claims. So that particular claim is time-barred. But it's not only that. It's that in the allegations of the complaint, he does not link defendants in any way to that demotion. He does not allege that the defendants participated in any way in that decision to demote him. That's a political discrimination case. He does not allege that defendants participated in any way in that demotion. So the only two personal actions that we have here to sustain his retaliation claim are the suspension with pay of September 14 and the subsequent 60-day suspension without pay of January 2015. And the problem with that argument, Your Honor, is that that cause of action is that the speech of which he alleges he suffered retaliation as a consequence of is not speech on matters of public concern. All the speech that he refers about is filing administrative and criminal complaints against defendant Escobar for the arrest, the aggression, the alleged aggression that happened. And that is not a matter of public concern. Matters of public concern would be corrosion in government, mismanagement of funds. That's not the type of... This is a personal fight between two persons. And this does not... And many, many cases from this court and, in fact, the case of Connie P. Myers said that personal matters of the employee are not matters of public concern for effects of the First Amendment. As to the due process violation, he was granted the Luther Mead hearing. And he makes an argument in his... Plaintiff makes an argument in his brief that an impartial fact finder was necessary. That's not correct. Not at that time, not at that stage. At that stage, this is the employer trying to filter out erroneous allegations, trying to prevent mistakes, trying to prevent somebody from being unjustly fired. And this is not necessary to have an impartial fact finder at that stage. The malicious prosecution claim he makes... There's simply no criminal case against plaintiff. He filed a criminal complaint against Defendant Escobar. And Escobar was acquitted, but he was entitled to present that criminal claim if he had one. But that claim was not against him. So he didn't... So the First Element for a malicious prosecution claim is not present here. And even if the administrative complaint filed within the agency could count as malicious prosecution, he didn't prevail. He was suspended. So there's no way a malicious prosecution claim can be configured in this context, in this case. Finally, they do not prove any conspiracy claim. They have not pled any conspiracy claim. The question... The matter is that allegations of the complaint... We can make a thousand allegations in a complaint, but it's not just the number of allegations. It's not just the number of instances. But being able to connect those things to the proper defendants. We need a proper defendant. We need quality. There's a lot of quantity in this complaint. There's no quality. If plaintiffs wanted to add additional things or make corrections to their complaint, they could have amended the complaint at any time. They did not. So the dismissal... Right now, the dismissal is basically a consequence of their own failure to plead a plausible claim against defendants. And finally, there is an argument of retaliation for him having invoked the Fifth Amendment in the first pre-termination hearing. First of all, he did not develop this argument in his brief. So that's waived. But even if it was not waived, there was no criminal investigation. There is no allegation that he was subjected to a criminal investigation. There was no allegation that he was a suspect of anything. So it is very doubtful that he could have invoked the Fifth Amendment himself. And the only evidence, the only fact that connects the Fifth Amendment to the defendants is that his attorney went to the second pre-termination hearing he had saying, well, you're retaliating because he remained silent. But there's no fact that can show, that if proven, will show that such was the case. In summary, plaintiffs failed to file a plausible claim against defendants. They can. The district court dismissed the case with prejudice. It should have been without prejudice with respect to the state law claims. We understand that. But otherwise, the judgment should be fair. Thank you. Please support. My name is Peter Miller. I represent the Corporación del Fondo Seguro del Estado, which I'll refer to as my brother did, as El Fondo. That's how everybody knows it down here. On June of 2017, this case was dismissed with regards to the Fondo because the trial court, and we hold obviously that she ruled correctly, held that we had, that we were part of the, we were an arm of the state, and thus we got, we should receive the Eleventh Amendment immunity. Now, Judge Thompson, you made a very precise question about what's the effect of PROMESA. Why don't you answer? I will attempt to do so, ma'am. PROMESA, clearly the board there, in October 30th of 2016, they issued out a communique saying, these are the covered entities. It was every single public corporation of the Commonwealth of Puerto Rico. They exercise control. I can tell you anecdotally that they send consultants every Wednesday to the Fondo to look over the Fondo's books to make sure that the money is being spent in the way that the board feels is appropriate. But the situation, my brother mentioned a couple other cases that are at odds with Judge Cereso's decision, but those cases were from 2011 and 2012. The situation changed drastically from the moment the territorial law, Act 66, was passed in 2014. That law essentially said Puerto Rico is in a crisis, and all government agencies and entities are going to be under the control of the Secretary of the Treasury, and we can do with your money as we see fit. PROMESA came as a result of the financial failure of the Commonwealth, and the board exercises tremendous control. You're going to hear later on today about PROMESA in far more detail, but the reality is that the board controls the government of Puerto Rico as one entity. It doesn't separate out public corporations. More importantly, or additionally I should say, when the new government came in, they passed three laws in quick succession, Act 3, Act 8, and Act 26. And Act 3, in particular, states that it acknowledges the imposition of the Financial Oversight Board pursuant to the Puerto Rico Oversight Management and Economic Stability Act of 2016, and acknowledges that Puerto Rico is currently facing a debacle as a result of deeply rooted and structural issues that have been manifesting for many years, and in some cases for many decades. And what that law did, it placed everybody, every government instrumentality corporation in the same boat. Act 8 is called the Sole Employer Act. The government of Puerto Rico said every public employee is part of a whole. And then came Act 26, which said any public corporation that has a surplus, the money comes to Hacienda, or the treasury, to be used as they see fit. So when you look at all these laws, the four territorial laws, plus PROMESA, what comes out is that the government of Puerto Rico is being treated as a whole, but in particular the FONDO is a covered entity by the board. They haven't placed it in Title III yet to be seen by Judge Taylor Swain, but they could if they saw it fit to us. That means that they're an arm of the state. There's one thing that, at least to me, seems to be missing from your argument so far. Perhaps you could help me. As I understand our rule in Fresenius, when you get to Step 2, one of the main things that we look at is whether the state, the Commonwealth, has taken on the obligation to pay the fund's debts and other financial obligations. So tell me, does that exist under the PROMESA laws? Not the PROMESA laws, but the laws precursor to PROMESA. And if it doesn't, should we be changing the Fresenius test? The way I would put it, the way I will put it, is under Act 26 of the Commonwealth, any surplus that the FONDO has goes directly into Hacienda. And what that means is, in fact, that law also states that any extrajudicial settlement has to be approved by the Secretary of Justice. That sounds like arm of the state type stuff. Let me ask my question again. Has the Commonwealth undertaken the obligation to pay the debts of the fund, should there be any? That's the question that I'm asking, because I think that's important under Fresenius. And my answer, sir, is by virtue of the fact that any surplus that the FONDO generates goes directly to Hacienda, any judgment against the FONDO is going to have to come out of Hacienda as well, because the FONDO just has its operating budget and has to operate within those constraints. Anything out of that has to come elsewhere, because the excess, you know, the profit, if you will, is going elsewhere. And so the FONDO doesn't have control over that anymore. Let me ask you slightly differently, if I might. So is your answer in part that persons in plaintiff's position have to file claims as creditors in the PROMISA proceeding? Not yet, because the board has not entered the FONDO under Title III, but it could at any given time. And if that happens, that's what they would have to do. Do you need the 11th Amendment immunity in order to prevail? Well, as far as the FONDO, my brother addressed the other issues. We're just here addressing the 11th Amendment issue for the FONDO. Do you represent the FONDO? Yes, sir. Okay, I'll take that as your answer. Hi, Your Honor. Answering your question, Your Honor, the answer is no, Your Honor. The Commonwealth uses the FONDO like their own personal piggy bank. That's the truth, Your Honor. That's the truth. The Commonwealth doesn't pay anything at the FONDO. The Commonwealth is taking money from the FONDO, that's all. Under what authority? On the PROMISA. Now we're on the PROMISA law because the economic crisis that the bad administration of the Commonwealth for years have done. It's like the shareholder go to the corporation and take dividends from the private corporation, Your Honor. That's why they're doing Commonwealth with the FONDO. The corporation still is independent from the shareholder and the Commonwealth. It's independent. To the extent that there are any current judgment pointers in your position that have judgments against the FONDO? Yes, Your Honor. Their case is a state, isn't that correct? It's a state court, yes. It's a state. It's a state court, yes. You're talking cross-purposes. You're saying it's a state, not are they in state. They're in state. State. In the case that we are addressing here is the case that Salud Casillas, Judge Salud Casillas v. Gilbert. In Gilbert, they found that the FONDO doesn't have 11 amendments, Your Honor. That's our contention. Is that a question, Your Honor? I don't know. I didn't get it. State. Would proceedings against the FONDO, judgment proceedings against the FONDO, be state under PROMESA? I don't think so, Your Honor. My question is, I don't have that official information, but I don't think so, Your Honor. The FONDO paid their own judgment. It's gone. Your Honor, very brief, a point about the question, why we didn't amend the complaint, very brief. There is an ordering in the docket, Your Honor, that in some point of time, after the motion to the unit was submitted, a ISC order was submitted. So the judge opened the door to make discovery and then come with the drastic decision of dismissal with prejudice, Your Honor. Thank you. I agree there, Your Honor. I do something that is not mine.